UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DUSTIN DUFAULT,

       Plaintiff,

v.

SHERIFF BILL LEEPER, in his official
capacity as Sheriff of Nassau County, et al.

       Defendants.

_____/

Case No. 3:25-cv-00683-MMH-MCR

**DEFENDANTS ANSTETT, LIPPELMAN, AND PINKSTON'S
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendants John Anstett, Robert Lippelman, and Ivan Pinkston, pursuant to

Federal Rules of Civil Procedure 8, 10, and 12, respectfully move to dismiss plaintiff

Dustin DuFault's "First Amended Complaint For Violations Of 42 U.S.C. § 1983,"

doc. 15, which, despite its title, is DuFault's *Second* Amended Complaint ("SAC") and

will be referred to as such herein, as follows:

**1.      Introduction**

This action arises from DuFault's dissatisfaction with NCSO's handling of

disputes involving his former spouse, including a trespass warning and child-abuse

investigation.  He attempts to transform those disagreements with law-enforcement

decisions into federal constitutional claims.  For the reasons discussed below, the SAC

should be dismissed.

2.    **Facts alleged**[1]

The SAC arises principally from three groups of events involving Erin Schreiber, the mother of DuFault's three minor children:  NCSO's handling of trespass complaints involving Schreiber; NCSO's refusal to investigate alleged falsification of the children's school attendance records; and Detective Pinkston's investigation of alleged abuse of one of DuFault's children by Schreiber's boyfriend, Richard "Noah" Raulerson.  Doc. 15 ¶¶ 3, 11-61.  DuFault alleges these events demonstrate preferential treatment of Schreiber and other school board employees.  *Id.* ¶¶ 2-3, 10, 99-104.

DuFault alleges he and Schreiber share custody under a parenting plan providing for exchanges at school when school is in session and at DuFault's residence when it is not.  *Id.* ¶ 9; Doc. 15-1 at 1, ex. A.  He alleges Schreiber nevertheless repeatedly came to his apartment outside authorized exchange periods and responding NCSO deputies declined his requests to trespass her after she asserted the parenting plan allowed her presence.  Doc. 15 ¶¶ 11-17.

On June 12, 2024, after Schreiber returned to DuFault's apartment following an initial NCSO response, Eastwood Oaks Apartments management independently requested that she be trespassed. *Id.* ¶ 18. When Schreiber returned on June 17, Deputies Sellers and McClendon issued a trespass warning. *Id.* ¶¶ 18-20.  The warning identifies Eastwood Oaks Apartments as the requesting business and states Schreiber

---

[1] For purposes of this motion, Anstett, Lippelman, and Pinkston accept as true the SAC's well-pled facts, but not its conclusory assertions or legal conclusions.

2

was trespassed from "all buildings and parking lot" for one year.  Doc. 15-1 at 2, ex. B.

Later that day, Schreiber contacted NCSO, and Sergeant Paolillo allegedly "picked up and voided" the warning.  Doc. 15 ¶ 21; Doc. 15-1 at 6, ex. C. When DuFault later contacted Paolillo, he allegedly advised that the warning would not be issued "due to the court order in place and after consulting with NCSO Legal Counsel."  Doc. 15 ¶¶ 22-23; Doc. 15-1 at 6, ex. C.  DuFault then emailed Sheriff Leeper who allegedly did not respond.  Doc. 15 ¶ 24; Doc. 15-1 at 8, ex. D.

Nearly a year later, on June 13, 2025, DuFault emailed NCSO General Counsel Robert Lippelman regarding the trespass issue.  Doc. 15 ¶ 26; Doc. 15-1 at 10, ex. E. DuFault alleges Lippelman did not personally respond, but Director John Anstett called him on June 16 on Lippelman's behalf.  Doc. 15 ¶ 26.  According to DuFault, Anstett stated NCSO would not enforce trespass laws where the parties had a parenting plan and declined to put that position in writing. *Id.*  DuFault memorialized the conversation in an email to Lippelman.  *Id.*; Doc. 15-1 at 10, ex. E.

DuFault next alleges Schreiber, a school board employee, removed the children from school during his timesharing periods without corresponding absences appearing in school attendance records.  Doc. 15 ¶¶ 28-35.  After identifying additional alleged discrepancies in 2025, DuFault brought documentation to NCSO on approximately June 23, 2025, seeking an investigation for possible falsification of records under section 839.13, Florida Statutes.  *Id.* ¶ 36; Doc. 15-1 at 13, ex. F.

3

Deputy Crews reviewed the materials but did not refer the matter to a detective. Doc. 15 ¶ 36. According to DuFault, Crews questioned whether he genuinely wished to pursue criminal charges against potentially involved school personnel and expressed his own views regarding attendance practices in Hilliard schools. *Id.* DuFault alleges NCSO refused to investigate the purported falsification. *Id.* ¶¶ 36-41. The SAC does not allege Anstett, Lippelman, or Pinkston participated in Crews's decision.

The allegations concerning Pinkston arise from an April 2024 child abuse investigation. *Id.* ¶¶ 42-61. DuFault alleges that after picking up his children on April 11, he discovered bruising on S.C.D.'s back and arms and was told the child had been in an altercation with Schreiber and Raulerson. *Id.* ¶ 42. DuFault took S.C.D. to UF Health North, where hospital personnel contacted the Florida Department of Children and Families ("DCF") and NCSO. *Id.* ¶ 43. NCSO personnel interviewed DuFault and another child, photographed S.C.D., and entered photographs into evidence. *Id.* ¶ 44; Doc. 15-1 at 24 & 65, exs. G, U.

The next day, DCF investigators interviewed DuFault and his children at his apartment while NCSO Deputy Silva was present. Doc. 15 ¶¶ 45-48. DuFault alleges Silva recorded portions of those interviews and agreed to forward the footage to Pinkston. *Id.* ¶ 47. DuFault and S.C.D. later participated in a Child Protection Team ("CPT") interview. *Id.* ¶ 49. DCF's chronological note states S.C.D. reported Raulerson grabbed him and slammed him into a wall and records "[i]nitial medical

4

impressions" of physical abuse and failure to protect by the mother.  Doc. 15-1 at 25, ex. H.

DuFault alleges Pinkston told him he needed the DCF report before proceeding. Doc. 15 ¶ 51.  Pinkston's investigative summary reflects that he contacted DCF and the CPT, received the CPT report on April 26, and interviewed Raulerson on April 29.  Doc. 15-1 at 50, ex. M.  According to the report, Raulerson stated S.C.D. struck his sister and later kicked Schreiber during a physical struggle, after which Raulerson restrained him.  *Id.*  Raulerson denied striking the child.  *Id.*  Pinkston concluded Raulerson did not knowingly or willfully abuse S.C.D., referenced Florida's parental-discipline defense, and deemed the case unfounded.  *Id.*

DuFault disputes Pinkston's investigative judgment.  Doc. 15 ¶¶ 48-60.  He alleges Pinkston should have personally interviewed him and the children, obtained and preserved other body camera recordings, reconciled Raulerson's account with other evidence, and given greater weight to the hospital and DCF/CPT information. *Id.*  He characterizes the investigation as cursory and its closure as "premature."  *Id.* ¶¶ 55-61.

DuFault also asserts allegations concerning public record requests relating to the abuse investigation, body camera recordings, the trespass warning, telephone records, and related materials.  *Id.* ¶¶ 62-98.  He alleges certain records were not produced, no longer existed, had been destroyed, or were inadequately explained or redacted.  *Id.* ¶¶ 63-90.  Correspondence attached to the SAC reflects that NCSO

5

produced materials and responded to follow-up requests, including by stating in some instances that no responsive document existed or information had been redacted as exempt.  Doc. 15-1 at 27, 58, & 62, exs. I, Q, S.

DuFault attributes the alleged public record deficiencies to Lippelman because he supervises NCSO's Records Division.  Doc. 15 ¶¶ 91-98.  He alleges Lippelman failed to respond to his communications and legal-hold requests while communicating with Schreiber and assisting her with records requests.  *Id.* ¶¶ 92-97.  The SAC does not identify any particular records request Lippelman personally processed or denied.  *Id.* ¶¶ 62-98.

Finally, DuFault alleges these events establish an NCSO custom of favoring Schreiber and school board employees.  *Id*. ¶¶ 99-104. He alleges NCSO ordinarily enforces trespass warnings for other property owners, investigates credible allegations of public record falsification, and conducts more thorough child abuse investigations in other cases.  *Id.* ¶¶ 101-03.

3.    **Claims asserted**[2]

Count III asserts a substantive due process claim under the Fourteenth Amendment against Anstett.  Doc. 15 ¶¶ 115-18.  DuFault alleges Anstett violated his substantive due process rights by "confirming and ratifying" NCSO's refusal to issue

---

[2] Only Anstett, Lippelman, and Pinkston have been served and are movants in this motion. Accordingly, this motion does not address Counts I and II, which are asserted solely against Paolillo, or Count X, which asserts a *Monell* claim against Sheriff Leeper in his official capacity.  Doc. 15 ¶¶ 106-14, 145-47.

trespass warnings against Schreiber and by communicating NCSO's position that it would not issue such warnings because of the parenting plan. *Id.* ¶¶ 116-17.

Count IV asserts an equal protection claim under the Fourteenth Amendment against Anstett. *Id.* ¶¶ 119-23. DuFault alleges Anstett confirmed a discriminatory non-enforcement policy under which NCSO would enforce trespass warnings for other property owners, but not for DuFault because of the parenting plan. *Id.* ¶¶ 120-22.

Count V asserts a substantive due process claim against Pinkston. *Id.* ¶¶ 124-27. DuFault alleges Pinkston conducted a "sham investigation" of the reported child abuse by failing to secure or conduct certain interviews, failing to adequately consider medical evidence, and closing the investigation as unfounded. *Id.* ¶¶ 125-26.

Count VI asserts an equal protection claim against Pinkston. *Id.* ¶¶ 128-32. DuFault alleges Pinkston treated his abuse report differently from reports made by other parents by conducting an inadequate investigation and failing to interview S.C.D. or adequately review the evidence. *Id.* ¶¶ 129-31.

Count VII asserts a substantive due process claim against Lippelman. *Id.* ¶¶ 133-36. DuFault alleges Lippelman provided legally erroneous advice that led to the rescission of the trespass warning and directed Anstett to communicate NCSO's position to DuFault. *Id.* ¶¶ 134-35.

Count VIII asserts an equal protection claim against Lippelman. *Id.* ¶¶ 137-40. DuFault alleges Lippelman participated in discriminatory enforcement concerning the

7

trespass warning and treated DuFault less favorably than Schreiber in responding to public record requests. *Id*. ¶¶ 138-39.

Count IX asserts a § 1983 conspiracy claim against Lippelman, Anstett, and defendant Paolillo. *Id*. ¶¶ 141-44. DuFault alleges they reached a mutual understanding to deprive him of substantive due process and equal protection by rescinding the trespass warning and formalizing a policy of non-enforcement benefiting Schreiber. *Id*. ¶¶ 142-44.

As to relief against Anstett, Lippelman, and Pinkston, DuFault seeks compensatory and punitive damages. *Id*. ¶¶ 148-50. He seeks compensatory damages of at least $500,000 against Anstett and Lippelman, jointly and severally if the alleged conspiracy is proven, or alternatively damages against each individually, and at least $750,000 against Pinkston. *Id*. ¶¶ 148-49. DuFault also seeks punitive damages of at least $1 million against each individual defendant, together with costs and attorney's fees. *Id*. ¶¶ 150, 152.

### 4.    Pleading and motion to dismiss standards

Under Rule 8(a), a claim must contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Rule 8(d)(1) requires that "each allegation must be simple, concise, and direct." Rules 8 and 10 "work together" to "require the pleader to present his claims discretely and succinctly,

so that his adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims. . . ." *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (citation omitted).

In considering a motion to dismiss, the court must accept all allegations as true, construing them in the light most favorable to the non-movant. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement showing entitlement to relief, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not contain detailed factual allegations, but legal conclusions or recitation of elements are not enough. *Twombly*, 550 U.S. at 555. Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

When considering a motion to dismiss, the Court may examine the exhibits that are attached to the complaint. *See Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

**5.      The SAC should be dismissed.**

    **A.      The SAC violates Rules 8 and 10.**

Complaints that violate the "short and plain" requirements of Rule 8 impose "a heavy burden on the trial court, for it must sift each count for the allegations that pertain to the cause of action purportedly stated and, in the process, disregard the allegations that only pertain to the incorporated counts." *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n. 6 (11th Cir. 2006) (citations omitted). "[U]nless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. College*, 77 F.3d 364, 367 (11th Cir. 1996); *see Rivera Melendez v. Merck & Co.*, No. 618CV408ORL40GJK, 2018 WL 8224822, at *1 (M.D. Fla. May 29, 2018) ("The Amended Complaint . . . is excessively long-winded, and contains needless repetition and irrelevant factual allegations that detract from Plaintiff's attempt to state a claim. Due to its prolixity and needless repetition, the Amended Complaint misses the mark of simplicity required by Rule 8." (citations omitted)).

The SAC spans 58 pages and 152 numbered paragraphs, exclusive of the 21 exhibits, and recounts in considerable factual and evidentiary detail several distinct episodes occurring over more than a year. Much of that detail is unnecessary to identify the claims asserted and is interwoven with argument, legal conclusions, and characterizations of conduct. Compounding the problem, some counts incorporate

lengthy preceding allegations concerning separate events, actors, and theories rather than limiting each claim to facts material to the particular defendant and constitutional theory asserted. The result requires defendants—and ultimately the Court—to sift through an unnecessarily lengthy pleading to determine which allegations support which claims, contrary to Rules 8 and 10's requirement that claims be presented "discretely and succinctly." *Fikes*, 79 F.3d at 1082.

Apart from the substantive deficiencies addressed below, the SAC should be dismissed because it fails to provide the "short and plain statement" Rules 8 and 10 require.

### B.      Counts III, V, and VII fail to state substantive due process claims.

#### I.      The SAC does not plausibly allege the deprivation of a fundamental constitutional right.

The Due Process Clause's substantive component protects only "fundamental" rights—those created by the Constitution and "implicit in the concept of ordered liberty." *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994). Accordingly, a court considering a substantive due process claim must first identify the asserted right and determine whether it is fundamental. *Doe v. Moore*, 410 F.3d 1337, 1343 (11th Cir. 2005). The asserted right must be carefully described; substantive due process does not permit a plaintiff to invoke a recognized fundamental interest at a high level of generality while challenging governmental action that implicates no constitutionally protected aspect of that interest. *See Reno v. Flores*, 507 U.S. 292, 302 (1993). Absent deprivation of a fundamental constitutional right, executive governmental action does

not support a substantive due process claim.  *See Hillcrest Prop., LLP v. Pasco Cnty.*, 915 F.3d 1292, 1293 (11th Cir. 2019) ("[E]xecutive action never gives rise to a substantive-due-process claim unless it infringes on a fundamental right").

Counts III and VII do not identify any fundamental constitutional right.  Anstett is alleged to have confirmed NCSO's refusal to issue or enforce a trespass warning against Schreiber, while Lippelman allegedly provided erroneous legal advice.  Doc. 15 ¶¶ 115-18, 133-36.  Whatever interests DuFault may possess under Florida trespass law or the parenting plan, neither count alleges Anstett or Lippelman deprived him of a fundamental right.

Count V fares no better.  DuFault does invoke his fundamental liberty interest in the care and custody of his children, alleging Pinkston's "unfounded" determination was later used against him in family court proceedings and interfered with his parental relationship.  Doc. 15 ¶¶ 61, 105, 149.  But Pinkston is not alleged to have removed DuFault's children, altered his custody rights, restricted his parenting time, or otherwise exercised governmental authority over the parent-child relationship.  Rather, Count V challenges how Pinkston investigated alleged abuse by a private actor and his decision to close that investigation as unfounded.  Doc. 15 ¶¶ 124-27.  The asserted right is therefore not the fundamental right to care for one's children.  Rather, the asserted right is to a particular law enforcement investigation and a favorable investigative outcome.  No such fundamental constitutional right exists.

12

## II.   DuFault has no substantive due process right to compel particular law enforcement action.

The Due Process Clause generally imposes no affirmative obligation or duty on the government to protect an individual from private violence or provide particular law enforcement assistance. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-97 (1989).  Thus, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. The Supreme Court has applied this principle specifically to law enforcement, holding the Due Process Clause does not require police to take particular enforcement action even where a restraining order exists. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755, 760-64 (2005).

Count III faults Anstett for allegedly "confirming and ratifying" NCSO's refusal to issue or enforce a trespass warning.   Doc. 15 ¶ 116.  Count VII similarly faults Lippelman for allegedly providing legal advice that led to rescission of the warning and directing Anstett to communicate NCSO's position to DuFault.  *Id.* ¶¶ 133-36. Both claims therefore rest on the premise that DuFault possessed a constitutional right to have NCSO take particular enforcement action against Schreiber.  He did not.  The Due Process Clause does not require law enforcement to enforce a particular state law, issue or maintain a trespass warning, or otherwise take affirmative action to protect an individual from private conduct.

Count V fails for the same fundamental reason. DuFault alleges Pinkston violated substantive due process by conducting an inadequate investigation of the

13

reported child abuse. *Id.* ¶¶ 124-27. But if the Constitution does not require law enforcement to protect an individual from private violence in the first instance, it necessarily does not confer a substantive due process right to have a criminal complaint investigated in the particular manner the complainant believes appropriate.

### III. The alleged conduct of Anstett, Pinkston, and Lippelman does not rise to the level of conscience-shocking conduct.

"[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense," and negligent conduct is categorically insufficient. *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 849 (1998) (citation and internal quotation marks omitted). Conduct intended to injure arbitrarily and without legitimate governmental purpose is the type most likely to satisfy the conscience-shocking standard, but the inquiry is necessarily context-specific. *Id.* at 849-50. In evaluating police conduct, courts must consider the circumstances confronting the officer and may not judge the conduct with hindsight. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1352-53 (11th Cir. 2002).

As to Anstett, DuFault alleges only that he communicated NCSO's position that it would not enforce a trespass warning against Schreiber because of the parenting plan and declined to put that position in writing. Doc. 15 ¶¶ 116-17. As to Lippelman, DuFault alleges he provided legally erroneous advice concerning the trespass warning and directed Anstett to communicate NCSO's position. *Id.* ¶¶ 133-36. Even assuming those allegations are true, an allegedly mistaken interpretation of state law or an allegedly erroneous law enforcement policy is not the sort of egregious, arbitrary

conduct "in the constitutional sense" required to support a substantive due process claim.

The same is true of Pinkston. DuFault alleges Pinkston conducted an inadequate child abuse investigation. Such allegations amount, at most, to a challenge to Pinkston's investigative judgment and the adequacy of his methods. Even if DuFault could show Pinkston's investigation was negligent, incomplete, or inconsistent with preferred law enforcement practices, that would not transform it into conduct so egregious and arbitrary as to "shock the conscience."

### IV. Anstett, Pinkston, and Lippelman are entitled to qualified immunity because the SAC does not allege violation of any clearly established substantive due process right.

Qualified immunity protects government officials performing discretionary functions from individual capacity liability unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). A defendant invoking qualified immunity must first show he was acting within the scope of his discretionary authority when the challenged conduct occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Once that showing is made, the burden shifts to the plaintiff to establish that the facts alleged make out a constitutional violation and that the constitutional right was clearly established at the time of the challenged conduct. *Id*. A right is clearly established only where its contours are sufficiently

15

definite that a reasonable official would understand that what he is doing violates that right. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

The conduct attributed to Anstett, Pinkston, and Lippelman—communicating NCSO's position concerning enforcement of a trespass warning, making investigative judgments concerning a child abuse complaint, and providing legal advice regarding trespass enforcement—falls squarely within their respective discretionary functions. And, as discussed above, the SAC does not allege violation of any substantive due process right. Even assuming otherwise, there is no clearly established law holding an individual possesses a constitutional right to have law enforcement issue or maintain a trespass warning, conduct a criminal investigation in a particular manner, or provide legally correct advice concerning such enforcement decisions. In fact, *DeShaney* and *Castle Rock* point in the opposite direction.

### C.   Counts IV, VI, and VIII fail to state equal protection claims.

#### I.   The SAC does not identify any similarly situated comparator who received more favorable treatment.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where a plaintiff does not allege discrimination based on membership in a protected class, he may proceed under a "class of one" theory by plausibly alleging he was intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Griffin Indus.*, 496 F.3d at 1201-02. Comparators must be "similarly

16

situated in all material respects," *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc), and sufficiently similar that they "cannot reasonably be distinguished." *Id.* at 1228. A plaintiff must plead sufficient facts to particularize an actual similarly situated comparator; generalized allegations that others received more favorable treatment are insufficient. *See Carruth v. Bentley*, 942 F.3d 1047, 1059 (11th Cir. 2019). This requirement is particularly important where the challenged governmental decision involves multiple relevant considerations, because similarly situated persons must be compared in light of the full range of factors an objectively reasonable decisionmaker would consider. *See Griffin Indus.*, 496 F.3d at 1203, 1207; *see Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008) (noting the difficulty of establishing class of one equal protection claims where discretionary authority is exercised "based on subjective, individualized determinations" because in those situations "treating like individuals differently is an accepted consequence of the discretion granted").

Count IV alleges Anstett confirmed a policy of enforcing trespass warnings for "other property owners," but not DuFault because of the parenting plan. Doc. 15 ¶¶ 119-23. Yet DuFault identifies no property owner seeking trespass enforcement against a co-parent under comparable parenting plan circumstances. Reference to unidentified "other property owners" is insufficient to establish a similarly situated comparator.

17

Count VI suffers the same defect.  DuFault alleges Pinkston treated his child abuse report differently from reports by "other parents," including by failing to interview S.C.D.  *Id*. ¶¶ 48-60, 129-31.  But he identifies no comparable parent, report, or investigation.  Whether abuse investigations are similarly situated necessarily depends upon the allegations, evidence, witnesses, and circumstances confronting the investigator.   Generic reference to "other parents" therefore cannot establish the required comparator.

Finally, Count VIII alleges Lippelman participated in discriminatory trespass enforcement and treated DuFault less favorably than Schreiber concerning public records.  *Id*. ¶¶ 137-140.  But the SAC does not allege Schreiber made the same or a materially comparable records request, nor does it identify a similarly situated property owner who received different trespass enforcement.

## II.    The SAC does not plausibly allege Anstett, Pinkston, or Lippelman intentionally discriminated against DuFault without a rational basis.

A class-of-one claim requires not only intentional differential treatment, but also that "there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564; *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006).  Rational basis review is "highly deferential" and is satisfied where the challenged distinction is rationally related to a legitimate governmental interest, even when that relationship rests on "rational speculation" rather than evidence or empirical data. *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1220, 1224-25 (11th Cir. 2023).  The plaintiff bears the

18

burden of negating every conceivable rational basis for the differential treatment. *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001). Thus, equal protection does not require the government to adopt the best, wisest, or most defensible course of action; it prohibits differential treatment only when there is no rational justification. *See Doe v. Moore*, 410 F.3d 1337, 1346-48 (11th Cir. 2005).

As to Anstett, the SAC itself supplies a rational basis for the challenged treatment: NCSO's position rested on the parenting plan and its effect on Schreiber's access to DuFault's residence. Doc. 15 ¶¶ 120-22. Whether that interpretation was ultimately correct is not the relevant question. The parenting arrangement provided at least a conceivable rational basis for treating DuFault's trespass complaint differently from an ordinary trespass complaint.

Pinkston's alleged conduct is similarly grounded in rational law enforcement considerations. DuFault challenges his investigative judgments—what evidence he obtained, whom he interviewed, the weight he gave the available information, and ultimately his decision to close the investigation as unfounded. Doc. 15 ¶¶ 125-31. Even if DuFault believes those decisions were mistaken or incomplete, the SAC does not plausibly allege they were wholly arbitrary or lacked any conceivable law enforcement basis.

Nor do the allegations concerning Lippelman support an inference of irrational treatment. DuFault alleges Lippelman treated him less favorably than Schreiber regarding trespass enforcement and public record matters. Doc. 15 ¶¶ 137-40. But the

19

SAC itself reflects materially different circumstances, including the parenting plan, and does not allege Schreiber made the same or a materially comparable records request. Those differences provide rational grounds for different treatment.

### III.    The SAC does not allege Lippelman's personal participation in any particular denial of DuFault's public record requests.

Section 1983 does not impose supervisory liability for the unconstitutional acts of subordinates on the basis of respondeat superior or vicarious liability.  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  A supervisor may be individually liable only if he personally participated in the alleged constitutional violation or there is a causal connection between his actions and the alleged deprivation.  *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007).  A causal connection may be established by a history of widespread abuse placing the supervisor on notice; a custom or policy resulting in deliberate indifference to constitutional rights; or facts showing the supervisor directed subordinates to act unlawfully or knew they would do so and failed to stop them.  *Id.*  The standard for imposing individual liability upon a supervisor for a subordinate's conduct is "extremely rigorous."  *Braddy v. Fla. Dep't of Labor & Emp't Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

The SAC does not plausibly allege Lippelman's personal participation in the challenged handling of DuFault's public record requests or the requisite causal connection.  DuFault attributes the alleged deficiencies to Lippelman principally because he supervised NCSO's Records Division and allegedly failed to respond to DuFault's communications and legal-hold requests, while communicating with

20

Schreiber and assisting her with records requests.  Doc. 15 ¶¶ 91-98, 139.  But the SAC identifies no particular public record request Lippelman personally received, processed, denied, delayed, or directed others to withhold.  Nor does it allege a history of widespread constitutional violations placing Lippelman on notice, a policy or custom attributable to him that caused the alleged deprivation, or facts showing he directed subordinates to act unlawfully or knowingly permitted them to do so.  At bottom, the SAC attempts to attribute the Records Division's alleged conduct to Lippelman because of his supervisory position—the very form of vicarious liability § 1983 does not permit.

> **IV.    Anstett, Pinkston, and Lippelman are entitled to qualified immunity because the SAC does not allege violation of any clearly established equal protection right.**

The challenged conduct of Anstett, Pinkston, and Lippelman—communicating NCSO's position concerning trespass enforcement, making investigative judgments in a child-abuse investigation, and handling or supervising responses concerning trespass and public record matters—was plainly discretionary.  And, for the reasons discussed above, the SAC does not plausibly allege an equal protection violation in the first place.  Even if it did, DuFault can identify no clearly established law that would have given any reasonable official fair warning that these particular decisions, under these circumstances, constituted unconstitutional class-of-one discrimination.  The general right to equal protection is too abstract—the relevant question is whether existing

precedent clearly prohibited the specific conduct alleged here.  As the SAC does not identify such law, Counts IV, VI, and VIII are barred by qualified immunity.

> **D.   Alleged violations of Florida law or NCSO policy do not independently support § 1983 liability.**

To the extent DuFault predicates his claims upon alleged violations of Florida law, records retention requirements, or NCSO policies, those allegations do not state § 1983 claims.  Section 1983 provides a remedy for deprivation of rights secured by the federal Constitution or federal law; it does not federalize violations of state law or local policy.  *See Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("While the violation of state law may or may not give rise to a state tort claim, it is not enough by itself to support a claim under section 1983.").  Thus, even assuming defendants misinterpreted Florida trespass law or departed from state law or NCSO requirements, DuFault must still plausibly allege an independent federal constitutional deprivation. He fails to do so, further supporting dismissal of Counts III through VIII.

> **E.   Count IX fails to state a § 1983 conspiracy claim.**
>
> > **I.   The SAC does not state an underlying substantive due process or equal protection violation.**

A § 1983 conspiracy claim is derivative of an underlying constitutional violation; the plaintiff must establish an "underlying actual denial of [his] constitutional rights."  *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008).  As demonstrated above, the SAC fails to state either constitutional violation upon which Count IX depends.  Because DuFault's substantive due process and equal protection

theories fail, the alleged agreement among Anstett, Lippelman, and Paolillo—even if adequately pleaded—cannot independently support liability under § 1983.

> **II.    The SAC alleges no facts plausibly showing an agreement among Anstett, Lippelman, and Paolillo to violate DuFault's constitutional rights.**

To state a § 1983 conspiracy claim, a plaintiff must allege the defendants reached an understanding to deny the plaintiff his constitutional rights and the conspiracy resulted in an actionable constitutional deprivation. *Hadley*, 526 F.3d at 1332. The plaintiff need not allege a "smoking gun," and an agreement may be shown circumstantially, but the pleading must contain particularized facts supporting an inference that the defendants actually reached an agreement or understanding to violate his rights. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002). "Vague and conclusory allegations suggesting a Section 1983 conspiracy are insufficient." *Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1237 (M.D. Fla. 2008) (quoting *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)).

The SAC does not allege particularized facts showing Anstett, Lippelman, and Paolillo reached any agreement or understanding to violate DuFault's constitutional rights. Instead, it assigns each defendant a separate role and labels those actions a conspiracy. Doc. 15 ¶¶ 142-43. But the SAC alleges no particularized facts showing when or how the three reached an agreement to violate DuFault's constitutional rights.

Nor does the sequence of alleged events itself supply the missing agreement. The fact that different officials allegedly participated at different points in addressing

23

the same trespass dispute may establish that their conduct concerned the same subject matter, but it does not plausibly establish that they reached a mutual understanding to violate DuFault's constitutional rights.   The SAC's allegation that defendants "reached a mutual understanding and agreement," doc. 15 ¶ 142, is therefore precisely the type of conclusory assertion that cannot substitute for particularized facts showing a § 1983 conspiracy.

### III.   The conspiracy claim is barred by the intracorporate-conspiracy doctrine.

The intracorporate conspiracy doctrine provides that acts of an entity's agents are attributed to the entity itself; accordingly, an entity cannot conspire with its employees, and employees acting within the scope of their employment cannot conspire among themselves.  *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010).  The doctrine applies equally to public entities and their personnel.  *Id.*

The intracorporate-conspiracy doctrine independently defeats Count IX.  The SAC alleges Paolillo voided the trespass warning, Anstett confirmed NCSO's non-enforcement position, and Lippelman provided or approved the legal justification for that position.  Doc. 15 ¶¶ 142-43.  Those allegations describe actions taken by NCSO officials in the course of carrying out or communicating an asserted NCSO policy— not conduct by separate actors pursuing interests independent of the agency.  Indeed, DuFault elsewhere characterizes the same conduct as reflecting an official NCSO custom of non-enforcement.  *Id.* ¶¶ 145-47.  As Anstett, Lippelman, and Paolillo were allegedly acting as agents of the same governmental entity within the scope of their

24

NCSO roles, they constitute a single legal actor incapable of conspiring among themselves.

**F.    The SAC does not plausibly allege Anstett, Pinkston, or Lippelman caused the injuries for which DuFault seeks recovery.**

Section 1983 requires more than a constitutional violation; a plaintiff must also plausibly allege that the defendant's conduct caused the injury for which recovery is sought. *See Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000) ("[A] § 1983 plaintiff must prove causation both as an element of his constitutional tort and as a prerequisite to obtaining compensatory damages.").

DuFault seeks damages for diminished custody rights, family-court legal costs, reputational harm, lost work time, housing instability, security costs, and interference with his parent-child relationships. Doc. 15 ¶¶ 105, 148-49. These alleged injuries largely depend upon intervening conduct by DuFault's former spouse, family-court participants, property management, and other third parties—not conduct attributable to Anstett, Pinkston, or Lippelman. The SAC therefore does not plausibly allege the causal connection necessary to recover those damages under § 1983.

**6.    Conclusion**

For the reasons discussed, the SAC should be dismissed.

LOCAL RULE 3.01(g) CERTIFICATION

The above defendants certify that: A) they, through undersigned counsel, conferred with plaintiff before filing this motion; B) plaintiff does not agree on the resolution of all or part of this motion, namely dismissal of the SAC; and C) this motion is opposed, and the conferral occurred via e-mail on August 10, 2026.

Respectfully submitted on this 10th day of August, 2026.

By:    /s/ Dale A. Scott
       Dale A. Scott, Esq.
       Fla. Bar No. 568821
       dscott@tessmari.com
       ehemphill@tessmari.com
       Tessitore Mari Scott, PLLC
       1485 International Pkwy., Ste. 2031
       Lake Mary, FL 32746-5352
       Tel: 321-363-1634
       Fax: 321-319-9095
       Counsel for John Anstett, Robert
       Lippelman, and Ivan Pinkston

26

## CERTIFICATE OF SERVICE

I certify that a copy of this document has been furnished via email on this 10th

day of August, 2026, to:

Dustin DuFault
dustin@halcyonharbor.com
37425 Cody Circle
Apt. C12
Hilliard, FL 32046
Pro se plaintiff

By:    /s/ Dale A. Scott
       Dale A. Scott, Esq.