FILED - USDC - FLMD - JAX
AUG 31 2026 PM3:15

The United States District Court
For The Middle District Of Florida
Jacksonville Division

DUSTIN DUFAULT,

Plaintiff,

CASE NO. 3:25-cv-683-MMH-SJH

V.

SHERIFF BILL LEEPER, In His Official Capacity
as Sheriff of Nassau County, et al.,

Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiff Dustin DuFault, proceeding pro se, respectfully submits this Response in Opposition to Defendants John Anstett, Robert Lippelman, and Ivan Pinkston's Motion to Dismiss the Second Amended Complaint (Doc. 38), pursuant to Federal Rules of Civil Procedure 8, 10, and 12. For the reasons set forth below, Defendants' Motion should be denied. Alternatively, to the extent the Court determines that any claim requires additional factual specificity or clarification, Plaintiff respectfully requests leave to amend.

**1. Introduction**

Defendants characterize this action as an attempt to constitutionalize dissatisfaction with discretionary law-enforcement decisions. It is not. Plaintiff claims

no generalized constitutional entitlement to compel an arrest, prosecution, trespass warning, or particular investigation. The SAC instead alleges intentional differential administration of governmental authority when the same favored individual, Ms. Schreiber, was implicated. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Campbell v. Rainbow City, 434 F.3d 1306, 1313–14 (11th Cir. 2006).

The SAC alleges affirmative governmental acts and recurring departures from ordinary treatment, including NCSO's issuance of a trespass warning at the independent request of Plaintiff's property manager, its rescission after Schreiber objected, and its subsequent position that the Parenting Plan categorically precluded trespass enforcement; and materially different handling of a child-abuse complaint involving Schreiber's household, including allegedly omitted witness interviews and contemporaneous recorded evidence. SAC ¶¶2–3, 10, 13–27, 44–60, 99, 101–103.

Plaintiff recognizes Defendants' challenge to comparator specificity. As discussed in § G, Plaintiff has since obtained previously unavailable NCSO comparator investigations, including one conducted by Defendant Pinkston himself, demonstrating that any comparator deficiency is curable. Plaintiff accordingly requests denial of the Motion or, alternatively, leave to file a streamlined amended complaint curing any deficiency the Court identifies.

## 2. Legal Standard

To survive Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a plausible claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Court accepts well-pleaded facts as true and draws reasonable inferences in Plaintiff's favor. Johnson v. City of Atlanta, 107 F.4th 1292, 1297 (11th Cir. 2024).

## 3. Argument

### A. The SAC Corrected the Structural Deficiencies Previously Identified by the Court

Defendants first contend that the SAC violates Rules 8 and 10. In directing amendment of Plaintiff's original complaint, however, the Court identified two specific structural deficiencies: factual allegations were not incorporated into individual counts, and multiple §1983 claims against multiple defendants were combined such that the supporting allegations were unclear. Doc. 8 at 3. The SAC corrected both. Each constitutional theory is pleaded in a separate count against an identified defendant and expressly incorporates the supporting factual paragraphs. Defendants' own Motion confirms that the claims are intelligible: it separately identifies and advances claim-specific arguments against Counts III through IX.

Factual detail does not itself make a complaint an impermissible shotgun pleading. See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1321–23 (11th Cir. 2015). To the extent the Court nevertheless finds unnecessary detail or organizational defects, Plaintiff requests leave to streamline the pleading rather than dismissal of otherwise identifiable claims.

### B. Rule 12(b)(6) Tests Plausibility, Not Proof of Facts Unavailable Before Discovery.

Plaintiff recognizes that discovery cannot substitute for a plausible claim. But the SAC pleads externally observable governmental acts—including issuance and rescission of the trespass warning, an NCSO record attributing the resulting position to consultation with "NCSO Legal Counsel," the conduct and closure of the child-abuse investigation, disappearance of contemporaneous BWC evidence, and subsequent supervisory communications. Information not presently available—including internal communications, decisionmaker instructions, evidence-disposition history, and supervisory involvement—principally concerns proof, attribution, and explanation of events already pleaded. Plaintiff does not rely upon discovery to supply missing allegations, but to obtain additional evidence concerning the internal explanation, attribution, and decision making underlying governmental acts already pleaded.

### C. The Equal Protection Claims Challenge Selective Administration of Law-Enforcement Authority, Not a Claimed Constitutional Entitlement to Police Assistance.

Defendants repeatedly frame Plaintiff's claims as asserting a constitutional entitlement to compel law-enforcement action. Doc. 38 at 16–22. As stated above, Plaintiff claims no such entitlement; he alleges that governmental authority was intentionally administered differently when Schreiber was implicated.

Equal Protection reaches intentional differential treatment even outside a protected class. Olech, 528 U.S. at 564; Campbell, 434 F.3d at 1313–14. A class-of-one

plaintiff must allege intentional treatment different from similarly situated persons without rational basis. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007). Thus, the absence of a freestanding entitlement to police assistance does not itself resolve whether whatever governmental authority was exercised was intentionally administered differently without rational basis. The SAC moreover alleges affirmative acts, including rescission of an already-issued trespass warning and differential administration of a child-abuse investigation. SAC ¶¶13–27, 44–60.

Nor does Engquist v. Oregon Department of Agriculture, 553 U.S. 591 (2008), invoked by Defendants, Doc. 38 at 17, categorically bar these claims. Engquist arose in public employment and distinguished Olech as involving "a clear standard against which departures, even for a single plaintiff, could be readily assessed." Id. at 602–03. The Eleventh Circuit has extended Engquist only to the analogous government-contractor relationship, Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1274 (11th Cir. 2008), while continuing to adjudicate class-of-one claims arising from law-enforcement and regulatory action under the ordinary comparator framework. See Grider v. City of Auburn, 618 F.3d 1240, 1264 (11th Cir. 2010); Leib v. Hillsborough Cnty. Pub. Transp. Comm'n, 558 F.3d 1301, 1306–07 (11th Cir. 2009).

### D. The Trespass Allegations Plausibly Allege Intentional Differential Treatment

Defendants characterize the trespass claim as dissatisfaction with NCSO's discretionary refusal to provide a requested service. Doc. 38 at 17–19. The SAC alleges

something materially different. Eastwood Oaks independently requested Schreiber's exclusion; NCSO recognized that authority and issued the warning; Schreiber objected; NCSO then affirmatively "picked up and voided" the warning; and NCSO thereafter adopted a categorical position that trespass relief was unavailable because of the parties' Parenting Plan. SAC ¶¶13–27 & Exs. B–C.

The alleged reversal displaced authority exercised by a third-party property holder, not merely Plaintiff. NCSO's own procedure describes its New World Trespass Report as documenting "a warning given by one person to another," requires the proprietor or another person in an authoritative position to give the warning, and requires acknowledgment by the property owner or designee. SAC Ex. R. Eastwood Oaks accordingly supplied written authorization for Schreiber's exclusion, and the warning applied to its buildings and parking lot "per Eastwood Oaks Apartments management." SAC Ex. B. Yet NCSO's contemporaneous record identifies Schreiber—not Eastwood Oaks—as initiating the contact after which the warning was voided, while the SAC alleges Eastwood Oaks never withdrew and continued its authorization. SAC ¶27 & Ex. C.

The Parenting Plan does not facially resolve that anomaly. The alleged conduct prompting exclusion occurred during Plaintiff's timesharing and outside designated exchanges. SAC ¶¶11–18. Eastwood Oaks was not a party to the Parenting Plan, and the Plan's designation of an exchange location does not facially make Schreiber Eastwood Oaks' agent, transfer the property holder's authority to her, or grant

unrestricted access to the complex at unrelated times. SAC Ex. A. Thus, even assuming the Plan rationally justified access necessary for child exchanges, it does not facially explain the substantially broader action alleged: NCSO's post hoc nullification, at Schreiber's request, of an independently exercised property right belonging to Eastwood Oaks; continued refusal to honor the resulting warning despite no alleged withdrawal by Eastwood Oaks; and the subsequent alleged position that records memorializing the previously issued warning did not exist.

That mismatch also answers Defendants' rational-basis argument. Doc. 38 at 18–19. Defendants draw the negate-every-conceivable-basis formulation from Williams v. Pryor, 240 F.3d 944, 948 (11th Cir. 2001), which reviewed a legislative classification and the deference owed a legislature's hypothetical justifications. Plaintiff challenges no statute. He challenges the unequal execution of concededly valid law by individual officers against one person—the wrong equal protection reaches "whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Olech, 528 U.S. at 564 (citation omitted). In that class-of-one context the element is "no rational basis for the difference in treatment," id., assessed at the pleading stage from the face of the complaint. Griffin, 496 F.3d at 1207–08. Under either formulation, the well-pleaded facts negate the bases this record suggests. The contemporaneous record attributes the rescission to "the Court Order in place." SAC Ex. C. But the Parenting Plan is not an order granting Schreiber at-will access to Eastwood Oaks; it designates an exchange location. SAC Ex. A. An exchange provision

could conceivably justify a narrow accommodation—exchange-time access or an alternate location, which Plaintiff had already proposed. SAC ¶19. It does not conceivably justify what is alleged: same-day nullification of a third party's written authorization at the request of the person warned, continued non-enforcement although Eastwood Oaks never withdrew it, SAC ¶27, and the later assertion that no records of the warning exist, SAC Ex. S. A rationale that at most explains a narrow accommodation does not rationally explain wholesale nullification—the "irrational and wholly arbitrary" mismatch Olech held sufficient to plead. 528 U.S. at 565.

Florida trespass law and NCSO policy reinforce those distinctions. Sections 810.08 and 810.09 center exclusion authority upon the owner, lessee, or authorized person, and provide for law enforcement to communicate warnings in specified circumstances. Fla. Stat. §§ 810.08(1), (3); 810.09(1), (3); SAC Ex. T (NCSO civil-complaints policy). Plaintiff agrees that violation of state law or agency policy, standing alone, does not establish §1983 liability, and invokes those sources only as evidence: they identify the objective legal authority underlying the warning and frame whether NCSO intentionally and irrationally administered that authority differently when Schreiber was implicated.

### E. The Child-Abuse Investigation Allegations Plausibly Allege Intentional Differential Treatment

Defendants characterize Plaintiff's allegations against Pinkston as disagreement with the adequacy or outcome of a police investigation. See Doc. 38 at

14–15, 18–19. The SAC alleges more. Pinkston was notified on the night of the hospital report; the responding deputies documented that the matter was forwarded to CID and that CID intended to interview Plaintiff and the child the following day; yet Pinkston allegedly never conducted those interviews. SAC ¶¶44–48 & Ex. U. The SAC further alleges that Deputy Silva recorded DCF's interviews of the children and Plaintiff's contemporaneous cellphone evidence and agreed to forward that recording to Pinkston. SAC ¶47. Pinkston thereafter waited for DCF's report, received it April 26, interviewed Raulerson April 29, and allegedly closed the matter without independently interviewing Plaintiff or the children or reconciling materially conflicting accounts. SAC ¶¶44–60.

The BWC allegations are relevant not merely because recordings later disappeared. According to the SAC, contemporaneous recorded witness evidence existed within NCSO while Pinkston's investigation remained open. Even assuming solely for argument an ordinary ninety-day BWC retention period, Pinkston interviewed Raulerson only eighteen days after the hospital response. Later expiration therefore does not explain the alleged failure to obtain or incorporate those recordings while resolving the investigation. Nor does avoiding duplication with DCF, even if rational as a reason to defer duplicative interviews, explain the disposition ultimately entered. DCF did not merely transmit an allegation for NCSO to investigate; its investigation documented S.C.D.'s injuries and account, competing explanations from Schreiber and Raulerson, collateral evidence, and CPT's impression of physical abuse

and failure to protect. If Pinkston deferred investigative steps in order to await DCF's work, that assembled record makes more—not less—conspicuous the alleged failure either to reconcile those conflicting facts and medical findings or to obtain NCSO's own contemporaneously recorded witness evidence before entering his official disposition. Why the recordings became unavailable, and whether their disposition complied with NCSO and GS2 retention requirements, concerns information within NCSO's control. SAC Exs. J–L.

Plaintiff does not ask the Court to constitutionalize negligent police work or prescribe investigative technique. The alleged departures are relevant because Plaintiff pleads intentional differential administration: contemplated interviews did not occur, contemporaneous witness evidence allegedly existed, Pinkston interviewed the alleged perpetrator, and the matter was allegedly closed without reconciling conflicting witness accounts. Those facts must also be considered in the recurring context alleged in the SAC.

Defendants additionally challenge comparator specificity. Griffin, 496 F.3d at 1204–07; Campbell, 434 F.3d at 1314–16. As discussed in § G, Plaintiff has since obtained NCSO investigations, including one conducted by Pinkston himself, demonstrating that any comparator deficiency is curable by amendment; Plaintiff invokes those post-SAC materials only as relevant to amendment, not as operative allegations.

### F. The Recurring Direction of the Alleged Departures Supports a Plausible Inference of Intentional Differential Treatment

Defendants analyze the challenged episodes individually as exercises of law-enforcement discretion. But intentional unequal administration may be shown circumstantially, including through the sequence preceding a decision and departures from ordinary practice. See E & T Realty v. Strickland, 830 F.2d 1107, 1112–14 (11th Cir. 1987); cf. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 267–68 (1977).

Here, the SAC expressly alleges from its outset that separate episodes share a common feature of preferential NCSO treatment involving Schreiber or her associates. SAC ¶¶2–3, 10. It later pleads the incidents in ¶¶11–61 as a pattern and identifies alleged departures involving trespass enforcement, school-record falsification, and child-abuse investigation. SAC ¶¶99, 101–103. Those departures include the post-objection rescission of Eastwood Oaks' trespass warning, SAC ¶¶13–27; the refusal to investigate documented school-record discrepancies despite comparable investigations elsewhere, SAC ¶¶36–41, 101(b); and Pinkston's investigation, SAC ¶¶44–60, 101(c), 102(c). The Crews episode is invoked as circumstantial context only, not as a basis for individual liability of the movants.

Plaintiff does not contend that recurrence substitutes for pleading similarly situated comparators or the other elements of each claim. Rather, the consistent direction of distinct alleged departures is relevant to whether differential treatment

was intentional instead of the product of unrelated mistake or ordinary discretionary variation. See E & T Realty, 830 F.2d at 1112–14.

The same context bears upon Defendants' asserted rational explanations, addressed in §§ D and E above. Defendants may ultimately establish legitimate explanations for each action, but at the pleading stage well-pleaded facts and reasonable inferences are viewed in Plaintiff's favor, Johnson, 107 F.4th at 1297, and the recurrence, sequence, and departures alleged support the inference that the differential treatment was intentional rather than coincidental.

Defendants separately characterize Count VIII as imposing supervisory liability upon Lippelman for acts of the Records Division. Doc. 38 at 20–21. The SAC alleges more. Count VIII incorporates both the trespass and public-record allegations and alleges Lippelman's own participation in the challenged treatment: his alleged legal involvement in the trespass reversal; Plaintiff's direct communications to him concerning records and preservation; his alleged nonresponse to those communications; and his alleged personal assistance to Schreiber concerning her records request. SAC ¶¶91–98, 137–140. Plaintiff therefore does not seek to hold Lippelman liable merely because he supervised Records employees. These allegations concern his own alleged conduct and differential responsiveness. To the extent the Court requires greater specificity identifying particular requests, responses, or comparators attributable personally to Lippelman, Plaintiff requests leave to cure that deficiency as discussed in § G.

### G. Any Comparator-Specificity Deficiency Is Curable by Amendment

Defendants contend that the SAC lacks sufficiently specific similarly situated comparators. Doc. 38 at 16–18. If the Court agrees, the deficiency is curable and does not warrant dismissal with prejudice. Rule 15 directs courts to "freely give leave" to amend, Fed. R. Civ. P. 15(a)(2), and a pro se plaintiff generally must receive an opportunity to amend where "a more carefully drafted complaint might state a claim." Woldeab v. DeKalb Cnty. Bd. of Educ., 885 F.3d 1289, 1291–92 (11th Cir. 2018).

The comparator requirement is also calibrated to the nature of the challenged decision. Where governmental action is "multi-dimensional," comparators must be prima facie identical in all relevant respects; but where the decision is "simple or one-dimensional"—involving "the application of a single criterion to a single issue"—making out a class-of-one claim "is generally easier." Leib, 558 F.3d at 1307 (quoting Griffin, 496 F.3d at 1203). As pleaded, the challenged decision turned on few and objective criteria—an identified property holder's written authorization and an identified subject, Fla. Stat. §810.09(3); SAC Exs. B, R—and NCSO had already exercised whatever discretion it possessed by issuing the warning; the treatment challenged is its same-day reversal. Allegations that NCSO honors such warnings for property holders generally, SAC ¶¶101(a), 112, 121, are therefore closer to the generalized comparator sustained at the pleading stage in Olech than to the multi-dimensional comparisons rejected in Griffin.

Curability is concrete as to the investigative claim rather than speculative. After filing the SAC, Plaintiff obtained from an independent governmental source NCSO child-abuse investigations previously unavailable to him, including an investigation conducted by Pinkston himself. Those materials permit Plaintiff to plead particular comparator investigations, circumstances bearing upon relevant similarity, and the investigative steps NCSO undertook. As to trespass enforcement, comparable NCSO warnings and their treatment concern agency records and practices not presently available to Plaintiff. The newly obtained investigations demonstrate that greater comparator specificity is available at least as to the investigative claim, and Plaintiff requests leave to cure any comparator deficiency the Court identifies.

Nor do Plaintiff's prior amendments establish repeated failure to cure this defect. The First Amended Complaint responded to the Court's structural directions, and the SAC principally incorporated additional conduct occurring or discovered thereafter. Plaintiff has not previously been directed to plead more specific comparators and then failed to do so. Accordingly, if greater comparator specificity is required, Plaintiff requests leave to amend rather than dismissal with prejudice. Should the Court conclude that amendment is required, Plaintiff stands ready to file promptly a separate motion under Rule 15(a)(2) with a proposed amended pleading attached.

### H. Defendants Have Not Established Qualified Immunity from Plaintiff's Equal Protection Claims at the Pleading Stage

Qualified immunity protects officials performing discretionary functions unless the plaintiff alleges violation of a constitutional right that was clearly established when the conduct occurred. Brooks v. Miller, 78 F.4th 1267 (11th Cir. 2023); Powell v. Snook, 25 F.4th 912, 920–21 (11th Cir. 2022). Clearly established law may arise from materially similar precedent, a broader principle controlling the novel facts, or conduct so obviously unconstitutional that prior materially similar precedent is unnecessary. Id. The inquiry requires fair warning at an appropriate level of specificity, not merely invocation of a generalized right to equal protection. See Hope v. Pelzer, 536 U.S. 730, 741 (2002).

Plaintiff recognizes the difficulty created by Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1208–10 (11th Cir. 2007), and Corey Airport Services, Inc. v. Decosta, 587 F.3d 1280, 1286–88 (11th Cir. 2009), which declined to treat general Equal Protection principles as sufficient notice in fact-specific governmental decision making. But those decisions do not categorically immunize intentional differential administration; the question remains whether preexisting law gave fair warning concerning the particular conduct alleged. Hope, 536 U.S. at 741.

The trespass allegations present a materially more objective and one-dimensional exercise of sovereign authority than the fact-specific regulatory and bidding decisions in Griffin and Corey: the underlying exclusion authority belonged to an identifiable third-party property holder, NCSO had already recognized and acted upon that authority, and the challenged differential treatment was the subsequent

reversal allegedly triggered by the excluded person's objection. SAC ¶¶13–27 & Exs. A–C. The alleged sequence therefore involves not merely refusal to provide a discretionary benefit, but affirmative reversal of previously exercised police authority for the benefit of the person subjected to it.

Preexisting persuasive authority had applied class-of-one principles to exercises of sovereign police power. See Hilton v. City of Wheeling, 209 F.3d 1005, 1007–08 (7th Cir. 2000) (recognizing that deliberately unequal police protection states a claim under Olech upon a showing that the defendant acted for "reasons of a personal nature unrelated to the duties of the defendant's position," while affirming judgment absent evidence of such motive); Hanes v. Zurick, 578 F.3d 491, 495–96 (7th Cir. 2009) (distinguishing sovereign police power from the employment discretion addressed in Engquist); Geinosky v. City of Chicago, 675 F.3d 743, 747–48 (7th Cir. 2012) (pattern of baseless police action can itself support a class-of-one inference). Those decisions are not controlling Eleventh Circuit precedent. Their relevance is to whether the constitutional principle had developed concretely in the sovereign-policing context rather than existing only at the abstraction of Olech.

The Eleventh Circuit has since confirmed that persuasive out-of-circuit authority may be considered in determining whether a constitutional violation was one of "obvious clarity." *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246 (11th Cir. 2025) (en banc). Because Gilmore postdates the conduct alleged here, Plaintiff does not rely upon it as contemporaneous notice, nor contend that the Seventh Circuit decisions alone

clearly established the right. Its significance is methodological. Applied here, Olech, Hope, the objective sequence alleged, and the preexisting sovereign-policing decisions collectively support Plaintiff's contention that officials had fair warning against intentionally reversing an already-issued exercise of police authority, requested by the independent holder of the underlying property authority, for a favored private individual without rational justification.

The question is more difficult as to Pinkston because criminal investigations inherently involve substantial individualized judgment, and Plaintiff has not identified materially similar controlling precedent addressing the precise investigative conduct alleged. Plaintiff nevertheless alleges more than disagreement with technique. The SAC alleges that contemplated interviews did not occur and contemporaneous NCSO-recorded witness evidence existed while the investigation remained open; Pinkston's own investigative summary identifies receipt of the CPT report and his recorded interview of Raulerson but does not indicate that he obtained or reviewed NCSO's contemporaneous recorded interviews of the reported victim or other witnesses before deeming the case "unfounded." SAC ¶¶44–60 & Ex. M. Plaintiff maintains that these allegations, considered with the recurring differential treatment alleged, state intentional irrational discrimination, while recognizing that the absence of materially similar controlling precedent presents a closer question under the clearly-established-law prong.

At minimum, qualified immunity should not collapse constitutional violation and clearly established law. If the Court finds a constitutional violation plausibly alleged but concludes that a particular Defendant lacked sufficiently specific fair warning for individual damages liability, that ruling would concern qualified immunity's second prong; it would not establish that the alleged treatment was constitutional. Nor would individual qualified immunity itself adjudicate Count X against Sheriff Leeper, which Defendants expressly do not challenge. Doc. 38 at 6 n.2. Any qualified-immunity ruling should therefore be limited to the Defendant and claim to which it applies.

## I. Plaintiff Does Not Rely Upon Substantive Due Process as a Constitutional Right to Particular Police Services

Plaintiff recognizes that substantive due process creates no constitutional entitlement to particular law-enforcement protection or investigative services. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195–97 (1989); Town of Castle Rock v. Gonzales, 545 U.S. 748, 755, 760–64 (2005). Plaintiff therefore does not oppose dismissal of Counts III, V, and VII to the extent they assert such a freestanding right.

The underlying allegations nevertheless remain relevant to the Equal Protection claims because Plaintiff alleges affirmative governmental conduct and intentional differential administration, including rescission of an already-issued trespass warning and an official "unfounded" disposition following the allegedly

selective investigation. If the Court concludes the substantive-due-process counts employ an incorrect constitutional vehicle but that a more carefully pleaded alternative constitutional theory could be viable, Plaintiff requests leave to amend rather than dismissal with prejudice.

**J. Count IX Should Not Be Dismissed With Prejudice**

Defendants contend both that the SAC insufficiently alleges an agreement and that any conspiracy among NCSO personnel is barred by the intracorporate conspiracy doctrine. Doc. 38 at 24–25. As to agreement, the SAC alleges coordinated involvement in the same challenged reversal—voiding following consultation with "NCSO Legal Counsel," and subsequent communication and enforcement of the resulting institutional position. SAC ¶¶13–27 & Exs. B–C. At the pleading stage, Plaintiff relies upon that alleged sequence as circumstantial evidence of coordinated action rather than upon a conclusory assertion of agreement.

Plaintiff nevertheless recognizes that Grider v. City of Auburn, 618 F.3d 1240, 1261–63 (11th Cir. 2010), broadly applies the intracorporate conspiracy doctrine to §1983 claims involving employees acting within the scope of their employment and may foreclose Count IX as presently pleaded solely among NCSO personnel. The SAC alleges that Schreiber initiated the contact preceding rescission of the warning, but does not presently allege sufficient facts to establish that she or another outsider reached an understanding with NCSO personnel to accomplish the alleged constitutional deprivation. Plaintiff will not manufacture such an agreement without a Rule 11 basis.

Plaintiff's concession concerning the substantive-due-process theory does not independently dispose of Count IX insofar as the alleged agreement sought to accomplish the Equal Protection violation pleaded from the same trespass episode. If the Court concludes that Count IX as presently pleaded is barred or insufficient, Plaintiff respectfully requests dismissal without prejudice, without foreclosing amendment should discovery provide a Rule 11 basis to allege an agreement involving an outside participant or otherwise a legally cognizable conspiracy.

**K. Defendants' Causation Argument Does Not Warrant Dismissal**

Plaintiff recognizes that compensatory damages under §1983 require causation. Jackson v. Sauls, 206 F.3d 1156, 1168 & n.16 (11th Cir. 2000). But a plaintiff whose constitutional rights are violated is entitled to nominal damages even if he suffers no compensable injury. Slicker v. Jackson, 215 F.3d 1225 (11th Cir. 2000); Carey v. Piphus, 435 U.S. 247, 266 (1978); Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003). Defendants' challenge to whether particular consequential injuries alleged in the SAC were proximately caused by a particular Defendant therefore concerns the scope of compensatory damages and does not independently require dismissal where the constitutional violation itself is otherwise adequately pleaded.

**4. Conclusion**

For the foregoing reasons, Plaintiff respectfully requests denial of the Motion as to the Equal Protection claims and qualified immunity; does not oppose dismissal

of Counts III, V, and VII to the extent stated in § I; requests dismissal of Count IX without prejudice if the Court finds it presently barred; and alternatively requests leave to amend any curable pleading deficiency. Should any claim against the individual movants nevertheless be dismissed, Plaintiff respectfully requests that the dismissal rest on the ground actually decided, and that it be without prejudice to amendment as stated in § G and to Count X against Sheriff Leeper, which this Motion does not challenge.

Respectfully submitted,

Dustin DuFault
Pro Se Plaintiff
37425 Cody Circle; Apt C12
Hilliard, FL 32046
410.982.9607
legalservice@halcyonharbor.com
Date: August 31, 2026

**CERTIFICATE REGARDING SERVICE**

I HEREBY CERTIFY that on August 31, 2026, I hand-delivered the foregoing to the Clerk of Court, United States District Court for the Middle District of Florida, Jacksonville Division, for filing, and that on the same date I served a true and correct copy of the foregoing by United States first-class mail, postage prepaid, upon:

Dale A. Scott

Tessitore, Mari, Scott, PLLC

1485 International Parkway; Suite 2031

Lake Mary, FL 32746

Counsel for Defendants John Anstett, Robert Lippelman, and Ivan Pinkston.

Together with counsel's copy of this response, I also mailed to Mr. Scott copies of all items docketed in this action prior to his appearance as counsel of record.

Defendants Bill Leeper and Kellam Paolillo have not appeared in this action and no counsel has entered an appearance on their behalf. No service of this response was made upon them.

Dustin DuFault