UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DUSTIN DUFAULT,

Case No. 3:25-cv-00683-MMH-SJH

Plaintiff,

v.

SHERIFF BILL LEEPER, in his official capacity as Sheriff of Nassau County, et al.

Defendants.
_________________________________/

**DEFENDANT SHERIFF LEEPER'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendant Sheriff Bill Leeper, in his official capacity as Sheriff of Nassau County ("Sheriff Leeper"), pursuant to Federal Rules of Civil Procedure 8, 10, and 12, respectfully moves to dismiss plaintiff Dustin DuFault's "First Amended Complaint For Violations Of 42 U.S.C. § 1983," doc. 15, which, despite its title, is DuFault's Second Amended Complaint ("SAC"), as follows:[1]

## 1. Introduction

DuFault sues Sheriff Leeper solely in his official capacity and asserts a single claim against him—Count X, for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Count X seeks to impose municipal liability based upon

[1] As Sheriff Leeper is sued in his official capacity, the claim against him is treated as a claim against the governmental entity he represents. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Accordingly, references herein to the Nassau County Sheriff's Office ("NCSO") mean the governmental entity represented by Sheriff Leeper in his official capacity.

NCSO's handling of several disputes involving DuFault and the mother of his children, including a trespass warning, alleged falsification of school records, and a child-abuse investigation.[2]

Count X warrants dismissal because the SAC does not plausibly allege an underlying constitutional violation, an official policy or sufficiently widespread custom, ratification by Sheriff Leeper, or a deliberately indifferent failure to train or supervise. DuFault's requests for declaratory and injunctive relief also fail because the SAC does not allege a real and immediate threat that he will again be subjected to the challenged conduct. The SAC should therefore be dismissed as to Sheriff Leeper.

**2. Allegations concerning Sheriff Leeper**[3]

The SAC alleges that Sheriff Leeper is NCSO's final policymaker and asserts generally that NCSO maintained unconstitutional policies and customs. Doc. 15 ¶ 7.A. The SAC alleges only that DuFault sent Sheriff Leeper an email after the trespass warning had been rescinded and received no response; it does not allege that Sheriff Leeper received or reviewed the email, much less that he approved the rescission or its underlying rationale. *Id.* ¶ 24.

Count X alleges that, through the actions of NCSO General Counsel Robert Lippelman, NCSO Director John Anstett, Sergeant Kellam Paolillo, and unidentified

[2] Defendants Anstett, Lippelman, and Pinkston previously moved to dismiss the same pleading. Doc. 37. Several of the arguments below substantially overlap with those raised in that motion. Because Local Rule 3.01(h) prohibits incorporation by reference, Sheriff Leeper restates the applicable arguments here in abbreviated form.

[3] For purposes of this motion, Sheriff Leeper accepts as true the SAC's well-pleaded facts, but not its conclusory assertions or legal conclusions.

deputies, NCSO "maintained, ratified, and enforced an official custom of non-enforcement of trespass and abuse related laws benefiting Ms. Schreiber, and failed to train or supervise personnel regarding constitutional enforcement duties." *Id.* ¶ 146. DuFault alleges that these customs and supervisory failures were the moving force behind the violations alleged in Counts I through III. *Id.* ¶ 147.

DuFault seeks compensatory damages from Sheriff Leeper, together with declaratory and permanent injunctive relief requiring, among other things, that NCSO reopen a child abuse investigation, revise its enforcement and evidence-preservation policies, train its personnel, implement additional oversight mechanisms, and preserve evidence. *Id.* ¶ 151.

**3. Pleading and motion to dismiss standards**

Under Rule 8(a), a claim must contain "a short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Rule 8(d)(1) requires that "each allegation must be simple, concise, and direct." Rules 8 and 10 "work together" to "require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims. . . ." *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (citation omitted).

In considering a motion to dismiss, the court must accept all allegations as true, construing them in the light most favorable to the non-movant. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement showing entitlement to relief, a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not contain detailed factual allegations, but legal conclusions or a recitation of the elements are not enough. *Twombly*, 550 U.S. at 555. Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

When considering a motion to dismiss, the Court may examine the exhibits that are attached to the complaint. *See Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

**4. Count X does not comply with Rules 8 and 10.**

Complaints that violate the "short and plain" requirements of Rule 8 impose "a heavy burden on the trial court, for it must sift each count for the allegations that pertain to the cause of action purportedly stated and, in the process, disregard the allegations that only pertain to the incorporated counts." *U.S. ex rel. Atkins v. McInteer*,

470 F.3d 1350, 1354 n. 6 (11th Cir. 2006) (citations omitted). "[U]nless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. College*, 77 F.3d 364, 367 (11th Cir. 1996); *see Rivera Melendez v. Merck & Co.*, No. 618CV408ORL40GJK, 2018 WL 8224822, at *1 (M.D. Fla. May 29, 2018) ("The Amended Complaint . . . is excessively long-winded, and contains needless repetition and irrelevant factual allegations that detract from Plaintiff's attempt to state a claim. Due to its prolixity and needless repetition, the Amended Complaint misses the mark of simplicity required by Rule 8." (citations omitted)).

The SAC spans 58 pages and 152 numbered paragraphs, exclusive of 21 exhibits, and recounts in substantial factual and evidentiary detail several distinct episodes occurring over more than a year. Much of that material is unnecessary to identify DuFault's claims and is interwoven with legal argument, conclusions, and characterizations of the defendants' conduct.

Count X compounds this problem by incorporating paragraphs 1 through 105 wholesale. Doc. 15 ¶ 145. Those paragraphs address different events, officials, records requests, investigations, and legal theories, without identifying which particular facts establish a policy, a widespread custom, ratification, a failure to train, or a causal connection to a constitutional injury. The result requires Sheriff Leeper and the Court to sift through the entire pleading to determine which allegations supposedly support

Count X. The SAC therefore fails to present the official-capacity claim discretely and succinctly as Rules 8 and 10 require.

**5. Count X fails to state a claim.**

**A. The SAC does not allege an underlying constitutional violation.**

A governmental entity may be liable under § 1983 only when an official policy or custom causes the deprivation of a federal constitutional right. *Monell*, 436 U.S. at 694. In the absence of an underlying constitutional violation, there can be no municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." (emphasis in original)).

Count X expressly alleges that NCSO's supposed customs and supervisory failures were the moving force behind the violations asserted in Counts I through III. Doc. 15 ¶ 147. Counts I and III assert substantive due process claims arising from the rescission of, or refusal to enforce, a trespass warning. *Id.* ¶¶ 106–09, 115–18. Count II asserts an equal protection claim arising from the same events. *Id.* ¶¶ 110–14. None states a constitutional violation.

**I. The substantive due process theories fail.**

The Due Process Clause's substantive component protects fundamental rights created by the Constitution. Executive conduct does not support a substantive due process claim unless it infringes such a right. *See Hillcrest Prop., LLP v. Pasco Cnty.*, 915

F.3d 1292, 1293 (11th Cir. 2019) ("[E]xecutive action never gives rise to a substantive-due-process claim unless it infringes on a fundamental right").

DuFault has no fundamental constitutional right to have law enforcement issue, preserve, or enforce a trespass warning. Nor does he possess a constitutional right to compel NCSO to investigate alleged criminal activity, investigate it in a particular manner, or reach his preferred outcome. Even an assertedly mandatory restraining order did not create a due process entitlement to police enforcement because law enforcement officers traditionally retain discretion concerning whether and how to enforce criminal laws. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760–68 (2005).

Paolillo's alleged rescission of the trespass warning, Anstett's alleged communication of NCSO's position concerning the parenting plan, and Pinkston's investigative decisions therefore did not deprive DuFault of a fundamental constitutional right. Whether those decisions were correct under Florida law does not transform them into substantive due process violations.

The alleged conduct also does not approach the level of arbitrariness necessary to "shock the conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 849–50 (1998). The SAC alleges, at most, that NCSO personnel misinterpreted the parenting plan or Florida law, exercised poor investigative judgment, or declined to pursue DuFault's reports as vigorously as he requested. Even accepting those characterizations, the allegations do not describe the type of egregious abuse of power necessary to state a substantive due process claim.

## II. The equal protection theories fail.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where a plaintiff does not allege discrimination based on membership in a protected class, he may proceed under a "class of one" theory by plausibly alleging he was intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Griffin Indus.*, 496 F.3d at 1201-02. Comparators must be "similarly situated in all material respects," *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc), and sufficiently similar that they "cannot reasonably be distinguished." *Id.* at 1228. A plaintiff must plead sufficient facts to particularize an actual similarly situated comparator; generalized allegations that others received more favorable treatment are insufficient. *See Carruth v. Bentley*, 942 F.3d 1047, 1059 (11th Cir. 2019). This requirement is particularly important where the challenged governmental decision involves multiple relevant considerations, because similarly situated persons must be compared in light of the full range of factors an objectively reasonable decisionmaker would consider. *See Griffin Indus.*, 496 F.3d at 1203, 1207; *see Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008) (noting the difficulty of establishing class of one equal protection claims where discretionary authority is exercised "based on subjective, individualized determinations" because in those

situations "treating like individuals differently is an accepted consequence of the discretion granted").

The SAC identifies no adequate comparator. It alleges generally that NCSO enforces trespass warnings for "other property owners" and properly investigates reports made by "other parents," but identifies no property owner who sought trespass enforcement against a co-parent under a comparable parenting plan and no parent whose abuse report presented materially comparable allegations, evidence, witnesses, and circumstances. Doc. 15 ¶¶ 101–03, 112, 121, 130.

A class-of-one claim requires allegations both that the plaintiff was intentionally treated differently and that "there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564; *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). The SAC also fails to plausibly allege the absence of a rational basis for the challenged decisions. As to the trespass warning, the SAC itself alleges that NCSO relied upon the parenting plan and its perceived effect on Schreiber's access to DuFault's residence. *Id.* ¶¶ 23, 26. Whether NCSO's interpretation was legally correct is not dispositive; the parenting arrangement supplied a conceivable rational basis for treating the matter differently from an ordinary trespass complaint.

The challenged investigative decisions likewise involved discretionary assessments of the available evidence, potential witnesses, competing accounts, and applicable Florida law. DuFault's disagreement with those assessments does not plausibly establish intentionally discriminatory treatment without a rational basis.

## III. State law and NCSO policy violations are not constitutional violations.

Much of the SAC rests upon allegations that NCSO personnel misinterpreted Florida trespass law, failed to comply with public-record or records-retention requirements, or departed from NCSO policies. But § 1983 provides a remedy for violations of federal rights; it does not federalize alleged violations of state law or local policy. *See Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("While the violation of state law may or may not give rise to a state tort claim, it is not enough by itself to support a claim under section 1983.").

Accordingly, even if NCSO personnel incorrectly interpreted Florida law, failed to preserve a record required by state law, or departed from an internal procedure, those allegations do not independently establish a constitutional deprivation.

## IV. The conspiracy claim lacks a predicate violation.

To the extent Count X is construed as depending upon the conspiracy alleged in Count IX, that claim likewise fails. A § 1983 conspiracy claim is derivative of an underlying constitutional violation; the plaintiff must establish an "underlying actual denial of [his] constitutional rights." *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008). As explained above, there is no underlying constitutional deprivation here. Moreover, the alleged participants were NCSO personnel acting within the scope of their employment and therefore constitute a single legal entity incapable of conspiring with itself under the intracorporate-conspiracy doctrine. *Grider v. City of Auburn*, 618 F.3d 1240, 1260–61 (11th Cir. 2010).

Because the SAC does not plausibly allege an underlying violation of DuFault's federal constitutional rights, Count X fails at the threshold.

**B. The SAC does not plausibly allege an official policy or widespread custom.**

Municipal liability cannot rest upon respondeat superior or the mere fact that an allegedly wrongful act was committed by a governmental employee. *Monell*, 436 U.S. at 691. Instead, a plaintiff must identify an officially promulgated policy or a persistent and widespread practice so settled that it carries the force of law. *McDowell v. Brown*, 392 F.3d 1283, 1289–90 (11th Cir. 2004).

DuFault identifies no written or officially adopted NCSO policy that is unconstitutional. Instead, he relies upon several decisions involving the same complainant, the same allegedly favored individual, and the same underlying family dispute. These allegations do not demonstrate a persistent and widespread NCSO practice affecting other persons in materially comparable circumstances. "A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310–11 (11th Cir. 2011).

The generalized assertion that NCSO maintained a "custom of non-enforcement of trespass and abuse related laws benefiting Ms. Schreiber" is conclusory. Doc. 15 ¶ 146. The SAC does not identify prior similar incidents involving other persons, the frequency or duration of the alleged practice, or facts showing the practice was so widespread and settled as to constitute NCSO policy.

### C. The SAC does not plausibly allege ratification.

Municipal liability based upon ratification requires facts showing that a final policymaker approved both a subordinate's decision and the basis for that decision. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."). A policymaker's failure to investigate or reverse a subordinate's completed act does not establish ratification. *Salvato v. Miley*, 790 F.3d 1286, 1296–97 (11th Cir. 2015) ("[A] single failure to investigate an incident cannot have caused that incident.").

The SAC generally alleges that Sheriff Leeper possessed final policymaking authority. Doc. 15 ¶ 7.A. But it does not allege Sheriff Leeper directed the challenged conduct, participated in any underlying decision, or affirmatively approved a decision and its asserted basis.

As noted above, the SAC alleges only that DuFault sent Sheriff Leeper an email after the trespass warning was rescinded and received no response. *Id.* ¶ 24. It does not allege that Sheriff Leeper received or reviewed the email, much less that he approved the rescission or its underlying rationale. Count X's conclusory use of the word "ratified" cannot substitute for the missing facts.

### D. The training and supervision theories are conclusory.

A failure to train or supervise supports municipal liability only when the deficiency amounts to deliberate indifference to constitutional rights and causes the

alleged constitutional violation. Deliberate indifference ordinarily requires a pattern of similar constitutional violations sufficient to place the policymaker on notice that existing training or supervision is inadequate. *Connick v. Thompson*, 563 U.S. 51, 61–63 (2011).

The SAC does not identify any particular deficiency in NCSO's training or supervision, describe the training that should have been provided, or allege a pattern of similar constitutional violations that placed Sheriff Leeper on notice. It likewise does not connect an identified training deficiency to any alleged constitutional injury. The bare allegation that NCSO "failed to train or supervise personnel regarding constitutional enforcement duties" is insufficient. Doc. 15 ¶ 146.

**E. The SAC does not plausibly allege causation.**

*Monell* causation requires a direct and carefully tested link between the challenged municipal policy and the particular constitutional injury; an attenuated chain of possible consequences is insufficient. *McDowell*, 392 F.3d at 1292–93.

DuFault seeks damages for diminished custody rights, family-court legal costs, reputational harm, lost work time, housing instability, security costs, and interference with his relationships with his children. Doc. 15 ¶¶ 105, 148–51. These alleged injuries depend principally upon intervening conduct by Schreiber, family-court participants, property management, and other third parties. The SAC does not plausibly allege that an NCSO policy or custom directly caused those injuries.

**6. DuFault lacks standing to obtain prospective relief.**

A plaintiff seeking declaratory or injunctive relief must allege a real and immediate, rather than conjectural or hypothetical, threat of future injury. Past exposure to allegedly unlawful conduct does not, by itself, establish standing to seek prospective relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 105–06 (1983).

The SAC recounts completed law enforcement decisions occurring in 2024 and 2025. It does not plausibly allege that DuFault faces an imminent future trespass decision, child abuse investigation, public record dispute, or comparable interaction in which NCSO will again apply the alleged practices to him. His generalized fear of continued unfavorable treatment is insufficient.

The requested injunction also depends upon constitutional rights that do not exist. DuFault has no constitutional entitlement to compel NCSO to reopen an investigation, investigate a complaint in a particular manner, adopt his preferred enforcement or evidence-preservation policies, or implement particular training and oversight measures. The requests for declaratory and injunctive relief should therefore be dismissed.

**7. Conclusion**

Sheriff Leeper respectfully requests that the Court dismiss the SAC as asserted against him.

## LOCAL RULE 3.01(g) CERTIFICATE

Sheriff Leeper certifies that: A) he, through undersigned counsel, conferred with plaintiff before filing this motion; B) plaintiff does not agree on the resolution of all or part of this motion, namely dismissal of the SAC; and C) this motion is opposed, and the conferral occurred via email on September 14 and 15, 2026.

Respectfully submitted on this 15th day of September, 2026.

By: /s/ Dale A. Scott
Dale A. Scott, Esq.
Fla. Bar No. 568821
dscott@tessmari.com
ehemphill@tessmari.com
Tessitore Mari Scott, PLLC
1485 International Pkwy., Ste. 2031
Lake Mary, FL 32746-5352
Tel: 321-363-1634
Fax: 321-319-9095
Counsel for Sheriff Bill Leeper, John Anstett, Robert Lippelman, and Ivan Pinkston

CERTIFICATE OF SERVICE

I certify that a copy of this document has been furnished via email on this 15th day of September, 2026, to:

Dustin DuFault
dustin@halcyonharbor.com
37425 Cody Circle
Apt. C12
Hilliard, FL 32046
Pro se plaintiff

By: /s/ Dale A. Scott
Dale A. Scott, Esq.