UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DUSTIN DUFAULT,

Plaintiff,

Case No. 3:25-cv-00683-MMH-MCR

v.

SHERIFF BILL LEEPER, in his official capacity as Sheriff of Nassau County, et al.

Defendants.
_________________________________/

**DEFENDANT PAOLILLO'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendant Kellam Paolillo ("Paolillo") moves under Federal Rules of Civil Procedure 8, 10, and 12(b)(6) to dismiss Counts I, II, and IX of plaintiff Dustin DuFault's Second Amended Complaint ("SAC"), doc. 15, incorrectly titled "First Amended Complaint For Violations Of 42 U.S.C. § 1983," as follows:

## 1. Introduction

DuFault sues Paolillo in his individual capacity for rescinding a trespass warning issued against Erin Schreiber, the mother of DuFault's children. He alleges Paolillo acted after consulting legal counsel for the Nassau County Sheriff's Office ("NCSO") and explained that the decision rested on an existing court order governing the parents' exchanges of their children. From that enforcement decision, DuFault asserts substantive due process, equal protection, and conspiracy claims.

The SAC does not plausibly allege any of those claims. DuFault has no fundamental constitutional right to require law enforcement to maintain a trespass warning against another person. His equal protection claim identifies no materially comparable person who received more favorable treatment and does not plausibly negate the parenting arrangement as a rational basis for the challenged decision. His conspiracy claim lacks both an underlying constitutional violation and facts supporting an agreement to violate his rights, and the intracorporate conspiracy doctrine independently bars it. Paolillo is also entitled to qualified immunity.

**2. Facts alleged**[1]

DuFault and Schreiber share custody of three minor children under a parenting plan. Doc. 15 ¶¶ 3, 9. The parenting plan excerpt attached to the SAC provides for exchanges at school when school is in session and at the father's residence when school is not in session, unless the parties mutually agree otherwise in writing. Doc. 15-1 at 1, ex. A. DuFault alleges the plan does not authorize Schreiber to enter his residence outside designated exchange periods. Doc. 15 ¶ 9.

DuFault alleges Schreiber repeatedly came to his apartment at Eastwood Oaks Apartments outside authorized exchange periods, caused disturbances, and claimed the parenting plan prevented responding deputies from trespassing her. *Id.* ¶¶ 11–17.

[1] For purposes of this motion, Paolillo accepts as true the SAC's well-pleaded facts, but not its conclusory assertions or legal conclusions.

He alleges deputies accepted her characterization and declined his requests to issue trespass warnings. *Id.*

On June 12, 2024, apartment management independently requested that NCSO trespass Schreiber from the property. *Id.* ¶¶ 16–18. DuFault alleges he then advised Schreiber that future exchanges would need to occur elsewhere and suggested a library. *Id.* ¶ 19. When Schreiber returned on June 17, Deputies Sellers and McClendon issued a trespass warning. *Id.* ¶ 20. The warning attached to the SAC identifies Eastwood Oaks Apartments as the requesting business and excludes Schreiber from all buildings and the parking lot for one year. Doc. 15-1 at 2, ex. B.

Later that morning, Schreiber contacted NCSO, and Paolillo allegedly responded and "picked up and voided" her copy of the warning. Doc. 15 ¶ 21; Doc. 15-1 at 6, ex. C. Another deputy then asked DuFault to surrender his copy, which he declined to do. Doc. 15 ¶ 22. When DuFault contacted NCSO that afternoon, Paolillo spoke with him by telephone and explained a trespass warning would not be issued "due to the court order in place and after consulting with NCSO Legal Counsel." *Id.* ¶ 23; Doc. 15-1 at 7, ex. C. DuFault requested contact from Paolillo's supervising lieutenant. Doc. 15 ¶ 23.

DuFault alleges Sheriff Leeper did not respond to his subsequent email. *Id.* ¶ 24. Nearly a year later, DuFault contacted NCSO General Counsel Robert Lippelman about the matter. *Id.* ¶ 26. According to the SAC, Director John Anstett called on Lippelman's behalf on June 16, 2025, and reiterated NCSO's position that it would

not enforce trespass laws when a parenting plan was involved. *Id.* DuFault alleges management never requested rescission and continued to authorize enforcement against Schreiber. *Id.* ¶ 27.

The SAC also addresses school attendance records, a child abuse investigation, public record requests, and alleged records-retention deficiencies. *Id.* ¶¶ 28–98. But the counts against Paolillo concern the trespass warning. *Id.* ¶¶ 106–14, 141–44. The SAC does not allege Paolillo investigated the child abuse report, decided whether to investigate school attendance records, or processed DuFault's public record requests.

**3. Claims asserted**

Count I asserts a substantive due process claim against Paolillo for allegedly voiding a lawfully issued trespass warning without legal authority. *Id.* ¶¶ 106–09. DuFault alleges Paolillo acted arbitrarily and with deliberate indifference to DuFault's and apartment management's property rights and safety. *Id.* ¶ 108.

Count II asserts an equal protection claim against Paolillo. *Id.* ¶¶ 110–14. DuFault alleges NCSO enforces trespass warnings for other property owners but Paolillo intentionally voided this warning because of favoritism toward Schreiber and without a rational basis. *Id.* ¶¶ 111–13.

Count IX asserts a § 1983 conspiracy claim against Paolillo, Anstett, and Lippelman. *Id.* ¶¶ 141–44. DuFault alleges they agreed to deprive him of substantive due process and equal protection by annulling the warning and formalizing a non-enforcement policy benefiting Schreiber. *Id.* ¶¶ 142–43.

DuFault seeks at least $500,000 in compensatory damages against Paolillo, Anstett, and Lippelman jointly and severally if he proves a conspiracy, or alternatively compensatory damages against each individually. *Id.* ¶ 148. He also seeks at least $1 million in punitive damages against each individual defendant, costs, and attorney's fees. *Id.* ¶¶ 150, 152. The express requests for declaratory and injunctive relief run against Sheriff Leeper in his official capacity. *Id.* ¶ 151.

**4. Pleading and dismissal standards.**

Under Rule 8(a), a claim must contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought, which may include relief in the alternative or different types of relief." Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct." Rules 8 and 10 "work together" to "require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims. . . ." *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (citation omitted).

In considering a motion to dismiss, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Although a pleading need only contain a short and plain statement showing entitlement to relief,

a plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not contain detailed factual allegations, but legal conclusions or a recitation of elements are not enough. *Twombly*, 550 U.S. at 555. Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

When considering a motion to dismiss, the Court may examine the exhibits that are attached to the complaint. *See Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

**5. The claims against Paolillo should be dismissed.**

**A. The SAC violates Rules 8 and 10.**

Rules 8 and 10 require a plaintiff to present claims clearly and concisely so defendants and the Court can identify the facts supporting each claim. *Fikes*, 79 F.3d at 1082. A complaint that forces the Court to sift through allegations to determine their relevance imposes an undue burden on judicial administration. *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006). Excessive length, needless repetition, and irrelevant allegations may defeat Rule 8's requirement of a short and

plain statement. *See Rivera Melendez v. Merck & Co.*, No. 618CV408ORL40GJK, 2018 WL 8224822, at *1 (M.D. Fla. May 29, 2018).

The SAC spans 58 pages and 152 numbered paragraphs, excluding exhibits, and interweaves several distinct disputes with extensive evidentiary discussion, legal argument, and conclusions. Counts I, II, and IX incorporate paragraphs 1–10 and 11–27, which identify the parties and describe the trespass dispute. Each count nevertheless attributes the collective injuries listed in paragraph 105 to Paolillo's challenged conduct. Doc. 15 ¶¶ 106, 109–10, 114, 141, 144. Those injuries include harms arising from the separate child abuse investigation, school records dispute, and loss of evidence, without an explanation of how Paolillo caused them.

Although paragraph 148 limits Paolillo's alleged liability to the trespass incident and related constitutional violations, the counts attribute unrelated injuries listed in paragraph 105 to his conduct without explaining the connection. This defect, compounded by the SAC's excessive length and repetition, warrants dismissal under Rules 8 and 10, apart from the substantive deficiencies discussed below.

## B. Count I fails to state a substantive due process claim.

### I. The SAC alleges no deprivation of a fundamental constitutional right.

The Due Process Clause's substantive component protects only "fundamental" rights—those created by the Constitution and "implicit in the concept of ordered liberty." *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc). Accordingly, a court considering a substantive due process claim must first identify the asserted right

and determine whether it is fundamental. *Doe v. Moore*, 410 F.3d 1337, 1343 (11th Cir. 2005). The asserted right must be carefully described; substantive due process does not permit a plaintiff to invoke a recognized fundamental interest at a high level of generality while challenging governmental action that implicates no constitutionally protected aspect of that interest. *See Reno v. Flores*, 507 U.S. 292, 302 (1993). Absent deprivation of a fundamental constitutional right, executive governmental action does not support a substantive due process claim. *See Hillcrest Prop., LLP v. Pasco Cnty.*, 915 F.3d 1292, 1293 (11th Cir. 2019) ("[E]xecutive action never gives rise to a substantive-due-process claim unless it infringes on a fundamental right").

Count I challenges a particular law enforcement decision: Paolillo's rescission of the trespass warning against Schreiber. Doc. 15 ¶¶ 107–08. Whatever rights DuFault or apartment management may possess under Florida property and trespass law, those state-created interests do not establish a fundamental constitutional right to require a law enforcement officer to maintain a particular warning. Nor does the SAC allege Paolillo took possession of DuFault's residence, entered it, or adjudicated the parties' property rights.

The SAC also invokes DuFault's parental relationship. *Id.* ¶ 105. But it does not allege Paolillo removed the children, modified the custody order, or directly restricted DuFault's parenting time. Its generalized allegations of resulting interference with parental relationships do not establish that rescinding the warning itself deprived

DuFault of a fundamental constitutional right. The specific right Count I asserts remains a supposed entitlement to a particular police response to private conduct.

## II. DuFault has no substantive due process right to continued enforcement of the warning.

The Due Process Clause generally imposes no affirmative duty on the government to protect an individual from private violence or provide particular law enforcement assistance. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-97 (1989). Thus, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. In the related procedural due process context, the Supreme Court held that the holder of a restraining order lacked a constitutionally protected property interest in its enforcement, emphasizing the traditional discretion afforded law enforcement officers. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 755, 760-68 (2005).

DuFault emphasizes that Paolillo affirmatively rescinded a previously issued warning requested by apartment management. Doc. 15 ¶¶ 18, 20, 107–08. That characterization does not supply the missing fundamental right. The challenged act changed NCSO's enforcement position; the SAC does not allege Paolillo restrained DuFault, compelled him to admit Schreiber, or prevented him from seeking relief in court. The asserted injury still rests on the claim that NCSO should have maintained police protection against Schreiber's private conduct. Management's request for the

warning and alleged continuing authorization of enforcement do not convert that enforcement interest into a federal substantive due process right. *Id.* ¶¶ 18, 27.

For purposes of this motion, the Court need not decide whether Paolillo correctly interpreted the parenting plan or Florida trespass law. Even accepting DuFault's allegation that the warning was valid and the parenting plan did not legally prohibit enforcement, Count I still fails to identify a fundamental constitutional right infringed by Paolillo's rescission of the warning.

**III. The alleged conduct does not shock the conscience.**

"[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense," and negligent conduct is categorically insufficient. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 849 (1998) (citation and internal quotation marks omitted). Conduct intended to injure arbitrarily and without legitimate governmental purpose is the type most likely to satisfy the conscience shocking standard, but the inquiry is necessarily context-specific. *Id.* at 849-50. In evaluating police conduct, courts must consider the circumstances confronting the officer and may not judge the conduct with hindsight. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1352-53 (11th Cir. 2002).

The SAC alleges Paolillo responded to Schreiber's complaint, retrieved and voided the warning, consulted NCSO counsel, and explained the decision by reference to the court order. Doc. 15 ¶¶ 21–23, 108. Even if the advice and resulting decision were erroneous, those allegations describe a disputed exercise of enforcement

judgment. They do not plausibly establish an abuse of governmental power sufficiently egregious to shock the conscience.

Nor do the labels "conscience-shocking," "arbitrary," and "deliberate indifference" supply the missing facts. *Id.* ¶ 108. Paolillo's response to Schreiber and refusal to adopt DuFault's position do not, without more, plausibly show conduct that meets the demanding constitutional standard. Count I therefore fails independently on this ground.

### C. Count II fails to state an equal protection claim.

#### I. The SAC identifies no materially similar comparator.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where a plaintiff does not allege discrimination based on membership in a protected class, he may proceed under a "class of one" theory by plausibly alleging he was intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Griffin Indus.*, 496 F.3d at 1201-02. Comparators must be "similarly situated in all material respects," *Lewis v. City of Union City*, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc), and sufficiently similar that they "cannot reasonably be distinguished." *Id.* at 1228. A plaintiff must plead sufficient facts to particularize an actual similarly situated comparator; generalized allegations that others received more favorable treatment are insufficient. *See Carruth v. Bentley*, 942 F.3d 1047, 1059 (11th

Cir. 2019). This requirement is particularly important where the challenged governmental decision involves multiple relevant considerations, because similarly situated persons must be compared in light of the full range of factors an objectively reasonable decisionmaker would consider. *See Griffin Indus.*, 496 F.3d at 1203, 1207; *see Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008) (noting the difficulty of establishing class of one equal protection claims where discretionary authority is exercised "based on subjective, individualized determinations" because in those situations "treating like individuals differently is an accepted consequence of the discretion granted").

Count II alleges only that NCSO enforces trespass warnings for "other property owners" while Paolillo voided this warning. Doc. 15 ¶ 112. It identifies no other complainant or property owner who sought comparable enforcement against a co-parent under a parenting plan designating the complainant's residence as an exchange location. It likewise identifies no comparable warning that Paolillo maintained despite a similar concern about a court-ordered exchange arrangement.

The initial issuance of the same warning by other deputies is not a comparator. It describes an earlier decision in the same matter, before the supervisory review DuFault challenges. Nor is Schreiber similarly situated to DuFault for this purpose: she was the subject of the warning and asserted access under a parenting plan, while DuFault sought enforcement against her. Their opposing positions in the same dispute do not establish different treatment of materially comparable complainants. The

conclusory assertion of favoritism cannot cure the missing comparator allegations. Nor does the allegation concerning Paolillo's July 2025 arrest identify a comparable trespass-enforcement decision; the SAC offers that allegation as a comparison to NCSO's handling of alleged school records falsification. Doc. 15 ¶ 101(b).

**II. Any alleged differential treatment had a rational basis.**

A class-of-one claim requires not only intentional differential treatment, but also that "there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564; *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). Rational basis review is "highly deferential" and is satisfied where the challenged distinction is rationally related to a legitimate governmental interest, even when that relationship rests on "rational speculation" rather than evidence or empirical data. *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1220, 1224-25 (11th Cir. 2023). The plaintiff bears the burden of negating every conceivable rational basis for the differential treatment. *Williams v. Pryor*, 240 F.3d 944, 948 (11th Cir. 2001). Thus, equal protection does not require the government to adopt the best, wisest, or most defensible course of action; it prohibits differential treatment only when there is no rational justification. *See Doe v. Moore*, 410 F.3d 1337, 1346-48 (11th Cir. 2005).

Even assuming differential treatment, the SAC itself identifies a rational distinction between this dispute and an ordinary trespass complaint. Paolillo allegedly relied on a court order after consulting NCSO legal counsel. Doc. 15 ¶ 23. The attached plan provides for exchanges at DuFault's residence when school is not in session

unless the parents agree otherwise in writing, while the warning excludes Schreiber from the entire apartment property for one year. Doc. 15-1 at 1–2, exs. A–B. Avoiding a perceived conflict between that broad exclusion and the court-ordered exchange arrangement supplies a rational enforcement consideration.

DuFault alleges the plan did not actually prohibit a trespass warning, that Schreiber appeared outside permitted exchange times, and that management possessed independent property rights. Those allegations frame his disagreement with the decision but do not eliminate the rational distinction the parenting arrangement presented. The warning's year-long exclusion from the entire exchange location presented an enforcement concern beyond Schreiber's presence during any particular incident. The Court need not endorse Paolillo's interpretation of Florida law to conclude that the alleged concern about the existing order defeats the bare assertion that no rational basis existed.

Finally, DuFault bases his favoritism allegation on Paolillo's response to Schreiber's request and rescission of the warning. Doc. 15 ¶ 113. Those acts do not plausibly establish differential treatment without a rational basis, particularly absent a materially similar comparator. Count II should be dismissed.

### D. Alleged violations of Florida law or NCSO policy do not independently establish § 1983 liability.

Section 1983 supplies a remedy for deprivation of federal rights; it does not convert a violation of state law or local policy into a constitutional tort. *Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002). The SAC repeatedly relies on Florida

trespass law, management's rights, and NCSO procedures for addressing trespass and distinguishing civil from criminal matters. Doc. 15 ¶¶ 14, 20–27, 74–81; Doc. 15-1 at 60, 63–64, exs. R, T.

Even if Paolillo misinterpreted the parenting plan, exceeded his authority under an NCSO procedure, or made an incorrect state-law enforcement decision, DuFault must still allege a distinct federal constitutional violation. DuFault cannot cure the deficiencies in Counts I and II merely by characterizing the rescission as contrary to Florida law or departmental policy.

### E. Count IX fails to state a § 1983 conspiracy claim.

#### I. The conspiracy claim lacks an underlying constitutional violation.

A § 1983 conspiracy claim is derivative of an underlying constitutional violation; the plaintiff must establish an "underlying actual denial of [his] constitutional rights." *Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008). Count IX rests on the same due process and equal protection theories arising from rescission and non-enforcement of the warning. Doc. 15 ¶¶ 142–44. Because those theories fail, an alleged agreement to engage in the same conduct cannot independently establish liability.

#### II. The SAC does not plausibly allege an agreement to violate DuFault's rights.

To state a § 1983 conspiracy claim, a plaintiff must allege the defendants reached an understanding to deny the plaintiff his constitutional rights and the

conspiracy resulted in an actionable constitutional deprivation. *Hadley*, 526 F.3d at 1332. The plaintiff need not allege a "smoking gun," and an agreement may be shown circumstantially, but the pleading must contain particularized facts supporting an inference that the defendants actually reached an agreement or understanding to violate his rights. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002). "Vague and conclusory allegations suggesting a Section 1983 conspiracy are insufficient." *Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1237 (M.D. Fla. 2008) (quoting *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)).

The SAC alleges that Paolillo consulted NCSO legal counsel, rescinded the warning, and explained the decision, and that Anstett reiterated the agency's position nearly a year later. Doc. 15 ¶¶ 21–26. Count IX assigns those officials separate roles and characterizes Lippelman's legal justification as pretextual. *Id.* ¶¶ 142–43. But consultation over an enforcement decision and subsequent communication of the same position do not themselves plausibly establish an agreement to deprive DuFault of federal rights.

Paolillo does not contend the SAC alleges no communication among NCSO personnel. Rather, the SAC lacks facts plausibly identifying an unconstitutional agreement, as opposed to consultation and agreement about how to handle the trespass dispute. The allegation that the defendants "reached a mutual understanding and agreement" to violate constitutional rights merely states the conclusion the supporting

facts must establish. *Id.* ¶ 142. Count IX therefore fails under the ordinary plausibility standard.

**III. The intracorporate conspiracy doctrine independently bars Count IX.**

The intracorporate conspiracy doctrine provides that acts of an entity's agents are attributed to the entity itself; accordingly, an entity cannot conspire with its employees, and employees acting within the scope of their employment cannot conspire among themselves. *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010). The doctrine applies equally to public entities and their personnel. *Id.*

The alleged participants were NCSO personnel addressing an NCSO enforcement decision: Paolillo reviewed and rescinded a warning, Lippelman supplied legal advice, and Anstett communicated the agency's position. Doc. 15 ¶¶ 7, 21–26, 142–43. Those are acts within their respective employment functions. Alleging that they performed those functions unlawfully does not, by itself, remove the conduct from the scope of employment. *Grider*, 618 F.3d at 1261–62.

Count IX alleges no outside conspirator, independent personal stake, or facts supporting another applicable exception. Its allegation that the officers formalized an NCSO non-enforcement policy confirms they acted for the same entity. The intracorporate conspiracy doctrine independently warrants dismissal of Count IX.

**F. Paolillo is entitled to qualified immunity.**

Qualified immunity protects officials performing discretionary functions unless their conduct violates clearly established federal rights of which a reasonable official

would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once the defendant establishes that he acted within his discretionary authority, the plaintiff must show both a constitutional violation and that the right was clearly established when the conduct occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

The SAC identifies Paolillo as an NCSO sergeant acting as a supervising law enforcement officer. Doc. 15 ¶ 7.D. Responding to a complaint about a warning, reviewing deputies' enforcement decisions, consulting agency counsel, and communicating the resulting decision fall within that role. DuFault's assertion that Paolillo lacked authority to rescind this particular warning does not resolve the discretionary-authority inquiry. That inquiry examines the nature of the official's job functions and powers, rather than assuming the alleged illegality removes the challenged conduct from those functions. *Carruth*, 942 F.3d at 1054–55.

For the reasons already discussed, the SAC alleges no violation of substantive due process or equal protection and no actionable conspiracy. Paolillo is therefore entitled to qualified immunity on that ground alone. Independently, the pleaded facts do not establish a violation of clearly established law.

The clearly established law inquiry requires fair warning in the circumstances confronting the official, not merely an abstract statement of constitutional principle. *Hope v. Pelzer*, 536 U.S. 730, 739–41 (2002). Neither the general right to equal protection nor the general protection against arbitrary government action clearly establishes that an officer violates federal law by rescinding a property-wide trespass

warning after consultation with counsel about a parenting order that designates the property as an exchange location.

*DeShaney* and *Castle Rock* undermine the claimed due process entitlement to maintaining the warning. *Olech* and *Griffin Industries* require materially comparable differential treatment without a rational basis, which the SAC does not plausibly allege. And the same alleged enforcement decision does not become an obvious constitutional violation merely because officers consulted or agreed about it. The facts do not describe conduct so plainly unconstitutional that a materially similar precedent was unnecessary to provide notice. Qualified immunity therefore independently requires dismissal of the claims against Paolillo.

**G. The SAC does not connect Paolillo to the remaining alleged injuries.**

Section 1983 requires a causal connection between the defendant's conduct and the injury for which compensatory damages are sought. *Jackson v. Sauls*, 206 F.3d 1156, 1168 (11th Cir. 2000). Although paragraph 148 ties the requested damages against Paolillo to the trespass incident and related constitutional violations, Counts I, II, and IX also invoke paragraph 105's broader collection of injuries. Those injuries include custody consequences attributed to the child abuse investigation, lost evidence, and harms attributed to the failure to investigate school attendance records. Doc. 15 ¶¶ 105, 109, 114, 144, 148.

The SAC neither alleges Paolillo participated in those investigations nor explains how his June 2024 rescission of the warning caused their results. The

allegations concerning missing trespass records and audit logs involve the same warning, but the SAC does not allege Paolillo personally withheld records, destroyed audit logs, or handled DuFault's records requests. *Id.* ¶¶ 74–82. The conclusory attribution of paragraph 105's collective injuries to his conduct does not supply the missing causal connection. This defect limits any claim for compensatory damages against Paolillo, even if the Court finds that the SAC sufficiently connects some injuries arising directly from the trespass dispute to his conduct.

**6. Conclusion**

Paolillo respectfully requests that the Court dismiss Counts I, II, and IX of the SAC as asserted against him for failure to state a claim and on qualified immunity grounds.

LOCAL RULE 3.01(g) CERTIFICATE

Defendant Paolillo certifies that: A) he, through undersigned counsel, conferred with plaintiff before filing this motion; B) plaintiff does not agree on the resolution of all or part of this motion, namely dismissal of Counts I, II, and IX against Paolillo; and C) this motion is opposed, and the conferral occurred via email on September 23, 2026.

Respectfully submitted on this 23rd day of September, 2026.

By: /s/ Dale A. Scott
Dale A. Scott, Esq.
Fla. Bar No. 568821
dscott@tessmari.com
ehemphill@tessmari.com
Tessitore Mari Scott, PLLC
1485 International Pkwy., Ste. 2031
Lake Mary, FL 32746-5352
Tel: 321-363-1634
Fax: 321-319-9095
Counsel for Sheriff Bill Leeper, John Anstett, Robert Lippelman, Kellam Paolillo, and Ivan Pinkston

CERTIFICATE OF SERVICE

I certify that a copy of this document has been furnished via email on this 23rd day of September, 2026, to:

Dustin DuFault
dustin@halcyonharbor.com
37425 Cody Circle
Apt. C12
Hilliard, FL 32046
Pro se plaintiff

By: /s/ Dale A. Scott
Dale A. Scott, Esq.